## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MARSHA REYNGOLD, M.D., Ph.D.,

                        *Plaintiff*,

v.

NATIONAL INSTITUTES OF HEALTH,
NATIONAL LIBRARY OF MEDICINE, &
DEPARTMENT OF HEALTH AND HUMAN SERVICES,

                        *Defendants*.

CIVIL CASE NO. **24-CV-6496**

**COMPLAINT**

## INTRODUCTION

Plaintiff, Marsha Reyngold, M.D., Ph.D., formerly (during her now-dissolved marriage) known as Marsha Laufer, brings this action for declaratory and injunctive relief, and nominal damages against Defendants National Library of Medicine, National Institutes of Health, and the Department of Health and Human Services. As grounds therefor, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C).

## PARTIES

3. Plaintiff Marsha Reyngold, M.D., Ph.D. (hereinafter "Dr. Reyngold") is a physician and a researcher in the field of oncology—a branch of medicine that specializes in the diagnosis and treatment of cancer.

4. Defendant National Library of Medicine (hereinafter "NLM") is an agency of the United States Government, established pursuant to 42 U.S.C. § 286, and is housed within the Department of Health and Human Services.  Together with other Defendants, NLM owns and operates the search engine known as PubMed.

5.  Defendant National Institutes of Health (hereinafter "NIH") is an agency of the United States Government, established pursuant to 42 U.S.C. § 281, and is housed within the Department of Health and Human Services.  Together with other Defendants, NIH owns and operates the search engine known as PubMed.

6. Defendant Department of Health and Human Services (hereinafter "HHS" or "the Department") is a Cabinet-level department, headed by the Secretary of Health and Human Services.  Defendants NLM and NIH are components of the Department.  Together with other Defendants, NIH owns and operates the search engine known as PubMed.

## STATEMENT OF FACTS

7. Dr. Reyngold is a board-certified radiation oncologist who has been in practice since 2014.

8. Dr. Reyngold obtained her medical degree from Columbia University's College of Physicians & Surgeons in 2008 and her Doctor of Philosophy in Integrated Program in Molecular, Cellular and Biophysical Studies from Columbia University's Graduate School of Arts and Sciences in 2007.

9. Dr. Reyngold completed her residency training in radiation oncology at Memorial Sloan Kettering Cancer Center in 2014.

10. Dr. Reyngold was licensed to practice medicine in the State of New York in 2009. She became board-certified in radiation oncology in 2015 and was recertified in 2024.

11. Dr. Reyngold is currently employed as an assistant attending physician at Memorial Sloan Kettering Cancer Center—a leading cancer treatment and research institution in the world.

12. In addition to treating patients, Dr. Reyngold actively engages in research. She has co-authored over 40 publications and is the first author on ten of them.

13. Dr. Reyngold is a frequent speaker and presenter on scientific panels and at scientific conferences both in the United States and internationally.

14. Dr. Reyngold routinely applies for grants and seeks other opportunities to further her research.

15. When various entities consider whether or not to award grants, invite individuals to conferences, provide them speaking roles, etc., they consider that individual's publication record. Therefore, correct maintenance of a publication record is of utmost importance for Dr. Reyngold and other individuals in a similar position.

16. During a portion of her career, from the years 2004 to 2011, as a result of a legal name change due to marriage, Dr. Reyngold was known as Marsha Laufer.

17. In 2007, while known as Marsha Laufer, Dr. Reyngold published an article in the Journal of Biological Chemistry as the first author.

18. Since 2007, Dr. Reyngold reverted to using her current last name and has published her other studies under that (current) name.

19. Congress has required Defendants to "organize the materials [such as 'books, periodicals, prints, films, recordings, and other library materials pertinent to medicine'] by appropriate cataloging, indexing, and bibliographical listings." 42 U.S.C. § 286(b)(2).

20. In pursuance of the aforementioned Congressional mandate, Defendants operate "PubMed" which they describe as a "a free resource supporting the search and retrieval of biomedical and life sciences literature with the aim of improving health—both globally and personally."

21. PubMed permits the public to search the database by using a variety of approaches, including by key terms, journal name, the name of an author, etc.

22. PubMed also permits all authors to create a unique identifier known as "ORCID" which stands for "Open Researcher and Contributor ID." A researcher can link multiple names (*e.g.*, maiden name and married name) to her ORCID. Thus, PubMed is capable of cross-referencing articles authored by the same individual, but one who has undergone a name change.

23. Once a PubMed search is conducted (in whatever way) and results appear on the screen, the name of authors of each article appear as hyperlinks. Upon selecting (clicking on) an author's hyperlinked name, PubMed will produce all articles authored or co-authored by that individual.

24. However, even where an author has created an ORCID and linked all of the iterations of her name to it, selecting a hyperlink with that author's name does *not* produce articles that have been authored under a prior name. To illustrate, if a Jane Doe (née Roe) were to create an ORCID and link her current last name (Doe) to her prior last name (Roe), an individual who then clicked on the "Jane Doe" hyperlink would not, despite the ORCID linkage, encounter articles Jane authored under the last name Roe, and vice versa. Or, if a Jane Doe were to create an ORCID and link her current name Jane Doe to a first name used earlier in her professional life (*e.g.*, Karen Doe, which was really her middle name but she had been using as a first name),

an individual who then clicked on the "Jane Doe" hyperlink would not, despite the ORCID linkage, encounter articles Jane authored under the first name Karen, and vice versa.

25. Members of the public who conduct searches on PubMed do not know each individual researcher's ORCID and therefore almost never search by ORCID, and instead search by name.

26. Dr. Reyngold has created an ORCID which links her current last name and her prior one (Laufer) in the system.  Nevertheless, PubMed searches for "Marsha Reyngold" (whether done directly or by clicking through the hyperlink of her name) do not return the 2007 article in the Journal of Biological Chemistry which was authored under the Laufer last name.

27. Because search results in PubMed do not return Dr. Reyngold's full scientific contribution, she is disadvantaged when applying for various scientific grants, conferences, panel presentations and the like.  These disadvantages stem solely from Dr. Reyngold's decision (common to about 80% of married women) to change her name (or change it back) as part of getting married (or divorced).

28. Pew Research has reported that 79% of women under the age of 50 choose, upon marriage, to take their partner's name.  *See* https://tinyurl.com/ycy6wxsr.

29. It has been widely reported that "women in academics struggle to collate their work between their maiden and married names—and they risk losing critical funding, opportunities, or promotion as a result."  *See* Eleanor Pringle, *8 out of 10 Women Change Their Name After Marriage—They Might Not Realize the Impact It Has on Their Careers, Work Relationships, And Job Prospects*, Fortune (June 22, 2024), *available at* https://tinyurl.com/4ufhaxm9.

30. Despite the well-known negative impact of name changes on academics—an impact that falls disproportionally on women—Defendants have maintained a policy and practice of refusing to cross-reference publications to the same author who may have used multiple names.

31. Other search engines, *e.g.*, the Internet Movie Database (a/k/a IMDb), do cross-reference individuals who have used multiple names, and they link all such names to a single list for the body of work for that individual. For example, an IMDb search for "Courtney Arquette" (the actress most famous for playing Monica on the hit TV series *Friends*) returns a list of credits that include "Courtney Cox," which is the actress's maiden and post-divorce name. Similarly, if one were to search Westlaw for opinions by the Fifth Circuit Judge Priscilla Richman, who was previously known by her married name Priscilla Owen, the search engine returns a list of all opinions authored under both names. These examples show that such cross-referencing is both commonplace and technologically feasible.

## CLAIMS FOR RELIEF

### Count I: Fifth and Fourteenth Amendment—Violation of Equal Protection

32. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

33. The Fourteenth Amendment provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." This provision is equally applicable to the Federal Government. *See Schweiker v. Wilson*, 450 U.S. 221, 227 (1981) (The Supreme "Court repeatedly has held that the Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment.").

34. The federal government violates the equal protection requirements when it adopts or maintains policies that "ha[ve] a disparate impact upon a group that has historically been the victim of discrimination." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273 (1979).

35. Defendants' adoption and maintenance of a policy of refusing to cross-reference authors of

scientific publications, even after they have set up a unique ORCID identifier, to all the names that those authors have used has a disparate impact on women because women more commonly change their names.

36. Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' policy of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier such as an ORCID, to all the names that such authors have used, is declared to be unconstitutional and enjoined.

37. Plaintiff has no adequate remedy at law.

### Count II: Fifth Amendment—Violation of Substantive Due Process

38. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

39. The Fifth Amendment protects the fundamental right to marry and to divorce. *See Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) ("[D]ecisions of this Court confirm that the right to marry is of fundamental importance for all individuals."); *Aleman v. Glickman*, 217 F.3d 1191, 1204 (9th Cir. 2000) ("[O]ne has a fundamental right to marry which includes the right to divorce so that one can remarry ….").

40. Because the vast majority of women marrying in this country takes the name of their spouse upon marriage, Defendants' adoption of and maintenance of a policy of refusing to cross-reference authors of scientific publications, even after they have set up a unique identifier like ORCID, to all the names that such authors have used unjustifiably burdens the right to marry and/or to divorce.

41. Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' policy of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier like ORCID, to all the names that such authors have used is declared

to be unconstitutional and enjoined.

42. Plaintiff has no adequate remedy at law.

### Count III: Administrative Procedure Act § 706—Arbitrary or Capricious Policy

43. Plaintiff realleges and incorporates the preceding paragraphs as if fully incorporated herein.

44. Defendants are statutorily obligated to "organize the materials [such as 'books, periodicals, prints, films, recordings, and other library materials pertinent to medicine'] by *appropriate* cataloging, indexing, and bibliographical listings." 42 U.S.C. § 286(b)(2) (emphasis added).

45. Because Defendants' adoption and maintenance of a policy of refusing to cross-reference authors of scientific publications, even after they have set up a unique identifier like ORCID, to all the names that such authors have used has a disparate impact on women, such a policy is not "appropriate," serves no legitimate government goal, and is therefore arbitrary and/or capricious.

46. Plaintiff has been and will continue to be irreparably harmed unless and until Defendants' policy of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier like ORCID, to all the names that such authors have used is declared to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and on that basis "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2)(A).

### RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests that the Court: (1) declare the Defendants' policy, whether of formal or informal nature, of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier like ORCID, to all the names that such an author has used, to be unconstitutional; (2) declare the Defendants' policy, whether of formal or informal nature, of refusing to cross-reference authors of scientific publications, at least

once they have set up a unique identifier like ORCID, to all the names that such an author has used, to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" (2) enjoin Defendants from maintaining a policy, whether of formal or informal nature, of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier like ORCID, to all the names that such an author has used; (3) award Plaintiff nominal damages; (4) award Plaintiff reasonable attorneys' fees and costs; and (5) grant Plaintiff such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of any triable issues.

August 28, 2024　　　　　　　　　　Respectfully submitted,

/s/ Gregory Dolin
GREGORY DOLIN
Senior Litigation Counsel
JOHN J. VECCHIONE
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
Greg.Dolin@ncla.legal