**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARSHA REYNGOLD, M.D. Ph.D.,

      Plaintiff,

    v.           24 Civ. 6496 (JHR)

NATIONAL INSTITUTES OF HEALTH, NATIONAL
LIBRARY OF MEDICINE, and DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

      Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF THE**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**


DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov


TARA SCHWARTZ
Assistant United States Attorney
 – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    A.    NLM and PubMed.................................................................................................... 2

    B.    Plaintiff's Claims.................................................................................................... 5

LEGAL STANDARDS .............................................................................................................. 7

ARGUMENT ........................................................................................................................... 8

    A.    Plaintiff Lacks Article III Standing Because She Fails to Allege Any Injury ................ 8

    B.    Plaintiff Fails to Allege Any Violation of Equal Protection ......................................... 11

    C.    Plaintiff Fails to Allege Any Violation of Her Substantive Due Process Rights .......... 15

    D.    Plaintiff Fails to Allege a Violation of the APA ........................................................ 18

CONCLUSION...................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Pena,*
   515 U.S. 200 (1995).................................................................................................... 11

*Akers v. McGinnis,*
   352 F.3d 1030 (6th Cir. 2003) .................................................................................... 16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................................................. 7, 8

*Azizi v. Thornburgh,*
   908 F.2d 1130 (2d Cir. 1990)...................................................................................... 17

*Back v. Hastings on Hudson Union Free Sch. Dist.,*
   365 F.3d 107 (2d Cir. 2004)........................................................................................ 12

*Bakran v. Johnson,*
   192 F. Supp. 3d 585 (E.D. Pa. 2016) .......................................................................... 17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................................... 8

*Burrafato v. U.S. Dep't of State,*
   523 F.2d 554 (2d Cir. 1975)........................................................................................ 17

*Califano v. Jobst,*
   434 U.S. 47 (1977)....................................................................................................... 16

*Cantor Fitzgerald, Inc. v. Lutnick,*
   313 F.3d 704 (2d Cir. 2002)......................................................................................... 8

*City of L.A. v. Lyons,*
   461 U.S. 95 (1983)..................................................................................................... 7, 9

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)...................................................................................................... 9

*Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Hum. Servs.,*
   844 F. Supp. 770 (D.D.C. 1993)................................................................................. 20

*Cleveland Bd. of Educ. v. LaFleur,*
   414 U.S. 632 (1974)..................................................................................................... 17

*Collier v. Barnhart*,
   473 F.3d 444 (2d Cir. 2007)...................................................................................... 12

*Conn. Parents Union v. Russell-Tucker*,
   8 F.4th 167 (2d Cir. 2021) ......................................................................................... 7

*Conyers v. Rossides*,
   558 F.3d 137 (2d Cir. 2009)....................................................................................... 7

*Davila v. Lang*,
   343 F. Supp. 3d 254 (S.D.N.Y. 2018)...................................................................... 19

*Dep't of State v. Munoz*,
   602 U.S. 899 (2024) .................................................................................................. 16

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009).................................................................................................. 20

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
   528 U.S. 167 (2000)..................................................................................................... 7

*Goe v. Zucker*,
   43 F.4th 19 (2d Cir. 2022) ....................................................................................... 16

*Hayden v. Cnty. of Nassau*,
   180 F.3d 42 (2d Cir. 1999)................................................................................. 11, 12

*Immediato v. Rye Neck Sch. Dist.*,
   73 F.3d 454 (2d Cir. 1996)....................................................................................... 16

*Johnson v. Wing*,
   178 F.3d 611 (2d Cir.1999)...................................................................................... 13

*Karpova v. Snow*,
   497 F.3d 262 (2d Cir. 2007)..................................................................................... 19

*Keckeisen v. Ind. Sch. Dist. 612*,
   509 F.2d 1062 (8th Cir. 1975) ................................................................................. 17

*Kerry v. Din*,
   576 U.S. 86 (2015).................................................................................................... 17

*LaFleur v. Whitman*,
   300 F.3d 256 (2d Cir. 2002)..................................................................................... 18

*Loving v. Virginia*,
   388 U.S. 1 (1967)...................................................................................................... 15

iii

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................... 8

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ................................................................................... 7

*Makransky v. Johnson*,
   176 F. Supp. 3d 217 (E.D.N.Y. 2016) .................................................................. 16

*Marsh v. Oregon Nat. Res. Council*,
   490 U.S. 360 (1989) ............................................................................................. 18

*Murthy v. Missouri*,
   144 S. Ct. 1972 (2024) ........................................................................................... 9

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................. 10

*Nordlinger v. Hahn*,
   505 U.S. 1 (1992) ................................................................................................. 14

*O'Bannon v. Town Court Nursing Ctr.*,
   447 U.S. 773 (1980) ............................................................................................. 18

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .......................................................................................... 9, 10

*Obergefell v. Hodges*,
   576 U.S. 644 (2015) ............................................................................................. 15

*Parks v. City of Warner Robins*,
   43 F.3d 609 (11th Cir. 1995) ............................................................................... 16

*Personnel Adm'r of Mass. v. Feeney*,
   442 U.S. 256, (1979) ...................................................................................... 12, 13

*Quiroz v. Short*,
   85 F. Supp. 3d 1092 (N.D. Cal. 2015) ................................................................. 17

*Raines v. Byrd*,
   521 U.S. 811 (1997) ............................................................................................... 8

*Reynolds v. Barrett*,
   685 F.3d 193 (2d Cir. 2012) ................................................................................. 12

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
   483 U.S. 522 (1987) ............................................................................................. 11

iv

*Shain v. Ellison,*
    356 F.3d 211 (2d Cir. 2004).................................................................................................. 10

*Soc'y of Separationists, Inc. v. Herman,*
    959 F.2d 1283 (5th Cir. 1992) ............................................................................................... 8

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)............................................................................................................... 8

*Swartz v. Rogers,*
    254 F.2d 338 (D.C. Cir. 1958)............................................................................................. 17

*Tanov v. INS,*
    443 F.3d 195 (2d Cir. 2006)................................................................................................ 14

*Town of Castle Rock, Colorado v. Gonzales,*
    545 U.S. 748 (2005)............................................................................................................. 18

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021).......................................................................................................... 9

*Turner v. Safley,*
    482 U.S. 78 (1987)............................................................................................................... 15

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,*
    429 U.S. 252, (1977)...................................................................................................... 11, 12

*Washington v. Davis,*
    426 U.S. 229 (1976)............................................................................................................. 12

*Weinberger v. Wiesenfeld,*
    420 U.S. 636 ........................................................................................................................ 11

*Yick Wo v. Hopkins,*
    118 U.S. 356  (1886)............................................................................................................ 11

*Zablocki v. Redhail,*
    434 U.S. 374 (1978)....................................................................................................... 15, 16

*Zalewska v. County of Sullivan,*
    316 F.3d 314 (2d Cir. 2003)................................................................................................ 13

**Statutes**

42 U.S.C § 286(a) .......................................................................................................................... 2

42 U.S.C. § 286(b) ............................................................................................................... 2, 3, 4, 19

5 U.S.C. § 706(2)(A)..................................................................................................................... 18

5 U.S.C. §§ 701 *et seq.*.............................................................................................................. 1

Defendants the National Institutes of Health, National Library of Medicine, and the U.S. Department of Health and Human Services (collectively, the "Government" or "Defendants"), by their attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss all claims against them in the Complaint (ECF No. 1, the "Complaint" or "Compl."), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff, a physician and researcher in the field of oncology, brings this action alleging that the Government's maintenance of PubMed, a free resource supporting the search and retrieval of biomedical and life sciences literature, infringes on the equal protection and substantive due process rights afforded to her by the Fifth Amendment and is arbitrary and capricious and, therefore, violates the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. ("APA").

Specifically, Plaintiff takes issue with PubMed's search and cross-referencing capabilities, because searches in PubMed using her current name—Marsha Reyngold—do not return the single article she published under a name she previously used while married, and PubMed does not otherwise cross-reference her publications under different names. She alleges that the Government's decision not to cross-reference the full scientific contribution by a single author utilizing different names imposes a disparate impact upon women, who are more likely than men to change their name upon marriage, burdens the fundamental right to marry and divorce, and is arbitrary and capricious.

Plaintiff's complaint must be dismissed for several reasons. First, she does not have Article III standing sufficient to support her claim for injunctive and declaratory relief, as she has alleged no injury at all resulting from PubMed's policies. Additionally, each of her claims fail on the

1

merits.  Her equal protection claim must be dismissed because she fails to allege any invidious discrimination on the part of the Government; her substantive due process claim fails because she has not alleged that the Government has infringed on her right to marry or divorce; and her APA claim fails because there is nothing arbitrary or capricious about PubMed's policies.

## BACKGROUND

**A.**     **NLM and PubMed**

The National Library of Medicine ("NLM") was  established in  1956 in order to assist the advancement of medical and related sciences and to aid the dissemination and exchange of scientific and other information important to the progress of medicine and to the public health.  42 U.S.C § 286(a).  Congress charged the NLM with the following functions:

(1) acquire and preserve books, periodicals, prints, films, recordings, and other library materials pertinent to medicine;

(2) organize the materials specified in paragraph (1) by appropriate cataloging, indexing, and bibliographical listings;

(3) publish and disseminate the catalogs, indexes, and bibliographies referred to in paragraph (2);

(4) make available, through loans, photographic or other copying procedures, or otherwise, such materials in the Library as the Secretary determines appropriate;

(5) provide reference and research assistance;

(6) publicize the availability from the Library of the products and services described in any of paragraphs (1) through (5);

(7) promote the use of computers and telecommunications by health professionals (including health professionals in rural areas) for the purpose of improving access to biomedical information for health care delivery and medical research; and

(8) engage in such other activities as the Secretary determines appropriate and as the Library's resources permit.

42 U.S.C. § 286(b).

Pursuant to this statutory authority, the National Center for Biotechnology Information (NCBI), at the NLM, developed and maintains PubMed, a free resource supporting the search and retrieval of biomedical and life sciences literature. *See* NLM, PubMed Overview, https://pubmed.ncbi.nlm.nih.gov/about/ (last visited Nov. 22, 2024). PubMed has been available to the public online since 1996. *See id*. PubMed is not a publisher; but rather it collects, indexes, and archives scientific literature published by other organizations. *See* NLM, Disclaimer, https://pubmed.ncbi.nlm.nih.gov/disclaimer/ (last visited Nov. 22, 2024). PubMed is not a commercial site and has no commercial function. *See id*.

The PubMed database contains more than 37 million citations and abstracts of biomedical literature. *See id*. It does not include full text journal articles; however, links to the full text are often present when available from other sources, such as the publisher's website. *See id*.

PubMed receives information through journals and publishers, which submit bibliographic citation data. *See* NLM, XML Help for PubMed Data Providers, https://www.ncbi.nlm.nih.gov/books/NBK3828/#:~:text=Created:%20February%2026%2C%202008;,Update:%20October%2023%2C%202024.&text=Publishers%20of%20journals%20in%20PubMed,mln.ibcn@rehsilbup%5D (last visited Nov. 22, 2024). Such bibliographic citation data includes information about a published research article, including the title, authors, journal title, publication date, abstract, and other relevant metadata. The citation data is publicly presented in PubMed as it appears in the published journal article. *See id*.; *see also* NLM, Authorship in MEDLINE, https://www.nlm.nih.gov/bsd/policy/authorship.html (last visited Nov. 22, 2024) ("Author, group author, and collaborator names are entered for MEDLINE exactly as they are published in the journal article."); NLM, PubMed Disclaimer, https://pubmed.ncbi.nlm.nih.gov/disclaimer/ (last visited Nov. 22, 2024) ("The publisher is

responsible for maintaining the currency of the scientific record and depositing all relevant updates to the appropriate NLM database."). Further, if and when a publisher updates citation data, any such updates are reflected in the citation records indexed in PubMed. *See* NLM, XML Help for PubMed Data Providers, https://www.ncbi.nlm.nih.gov/books/NBK3828/#:~:text=Created:%20February%2026%2C%202008;,Update:%20October%2023%2C%202024.&text=Publishers%20of%20journals%20in%20PubMed,mln.ibcn@rehsilbup%5D (last visited Nov. 22, 2024). Accordingly, while PubMed relies on journals and publishers for bibliographic citation records, such records are not static. *See id.*[1]

Users of PubMed can search for biomedical and life sciences literature using over 30 different fields, which include, among others, author first name, author last name, title, date of publication, journal, issue, and publisher. *See* NLM, PubMed Advanced Search Builder, https://pubmed.ncbi.nlm.nih.gov/advanced/ (last visited Nov. 22, 2024); *see also* NLM, PubMed User Guide, https://pubmed.ncbi.nlm.nih.gov/help/ (last visited Nov. 22, 2024). PubMed also allows users to search by "Author Identifier" such as an Open Researcher and Contributor ID ("ORCID"). *See* NLM, PubMed User Guide, https://pubmed.ncbi.nlm.nih.gov/help/ (last visited Nov. 22, 2024). Thus, even if a single author has published under multiple names, searching by their Author Identifier, such as their ORCID number, would return all results associated with that number.

---

[1]    The National Information Standards Organization defines "Version of Record" as a "fixed version of a journal article that has been made available by any organization that acts as a publisher by formally and exclusively declaring the article 'published.'" *See* National Information Standards Organization, Journal Article Versions (JAV): Recommendations of the NISO/ALPSP JA Technical Working Group at 3 (April 2008), https://www.niso.org/sites/default/files/2017-08/RP-8-2008.pdf. A "Corrected Version of Record" is a "version of the Version of Record of a journal article in which errors in the [Version of Record] have been corrected. The errors may be author errors, publisher errors, or other processing errors." *Id*. at 4.

Additionally, PubMed has a resource called My Bibliography, which allows an author to create, maintain, and share a list of their publications with citation information including journal name in PubMed. *See* NLM, My Bibliography, https://www.ncbi.nlm.nih.gov/books/NBK53595/ (last visited Nov. 22, 2024); NLM, How do I create a link (web address) that will display all of my PubMed citations (and only my citations)?, https://support.nlm.nih.gov/kbArticle/?pn=KA-03303 (last visited Nov. 22, 2024). A user of the My Bibliography tool can add whatever citations they choose to their account, including citations that have different versions of their name. *See* NLM, My NCBI: What to Do, https://www.nlm.nih.gov/ncbi/workshops/2023-04_Report-NIH-Funded-Publications/MyNCBIwhat2do.html (last visited Nov. 22, 2024).

**B.    Plaintiff's Claims**

Plaintiff is a board-certified radiation oncologist who has been practicing since 2014. (Compl. ¶ 7). She is currently employed as an assistant attending physician at Memorial Sloan Kettering Cancer Center. (*Id*. ¶ 11).

In addition to treating patients, she actively engages in research and has co-authored over 40 publications, and is the first author listed on ten of them. (*Id*. ¶ 12). Plaintiff is a frequent speaker and presenter on scientific panels and at scientific conferences in the United States and internationally. (*Id*. ¶ 13). She routinely applies for grants and seeks other opportunities to further her research. (*Id*. ¶ 14).

During a portion of her career, from the years 2004 to 2011, as a result of a legal name change due to marriage, Plaintiff, who is presently known as Marsha Reyngold, was known as Marsha Laufer. (*Id*. ¶ 16). In 2007, while known as Marsha Laufer, Plaintiff published one article in the Journal of Biological Chemistry and is the first author listed in the bibliography of that article. (*Id*. ¶ 17). In 2007, Plaintiff reverted to using her current last name and has published her

5

other studies under her current name. (*Id*. ¶ 18). Given that Plaintiff's 2007 article was published under the surname Laufer, searches in PubMed utilizing the surname Reyngold do not return the 2007 article. (*Id*. ¶ 26). Further, while PubMed appears to cross-reference Plaintiff's publications under the surname Reyngold by hyperlinking her name to her publications, the hyperlink does not reference the 2007 article, under the name Laufer. (*See id*. ¶¶ 21-22, 26-27).

Plaintiff's complaint alleges that because searches in PubMed utilizing the name Marsha Reyngold, do not return her full scientific contribution (*i.e.*, the 2007 article she published under the name Marsha Laufer), she is disadvantaged when applying for various scientific grants, conferences, panel presentations and the like. (*Id*. ¶ 27). She asserts that these disadvantages stem solely from her decision to change her name or change it back as part of the process of getting married and divorced. (*Id*.).

Plaintiff claims that 79% of women under the age of 50 chose, upon marriage, to take their partner's name and that women in academics struggle to collate their work between their maiden and married names, which causes them to risk losing critical funding, opportunities, and promotions as a result. (*See id*. ¶¶ 28-29). She claims that cross-referencing the same individual over multiple names is done by the Internet Movie Database (IMDb) and Westlaw. (*Id*. ¶ 31). She further asserts that cross-referencing amongst different names is feasible because her PubMed ORCID already links her publications under both her current and prior names. (*See id*. ¶¶ 24-26).

Plaintiff claims that this limitation on PubMed's search capabilities constitutes: (1) a violation of equal protection because it has a disparate impact on women (*see id*. ¶¶ 32-37); (2) a violation of the fundamental rights to marry and divorce since the vast majority of women in this country take the name of their spouse upon marriages (*see id*. ¶¶ 38-42); and (3) a violation of the

APA because it is arbitrary and capricious (*see id*. ¶¶ 43-46).  She seeks the following types of equitable relief:

1. A declaration that the Government's policy of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier like ORCID, to all the names such an author has used, is unconstitutional.

2. A declaration that the Government's policy of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier like ORCID, to all the names that such an author has used, is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law."

3. An injunction that bars the Government from maintaining a policy of refusing to cross-reference authors of scientific publications, at least once they have set up a unique identifier like ORCID, to all the names that such an author has used.

(*Id*. at 8-9).

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The party invoking the Court's jurisdiction "bears the burden of establishing that jurisdiction exists."  *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citation omitted).  To survive a Rule 12(b)(1) motion, the allegations in the complaint must demonstrate, among other things, that plaintiff possesses Article III standing to seek the relief requested.  *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021).  "[A] plaintiff must demonstrate standing separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must assert "sufficient factual matter . . . to state a claim to relief that is plausible on its face" if taken as true.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  In making this determination, the court must accept well-pleaded factual

7

allegations in the complaint as true and construe reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572 (2007).  Simply offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  And courts need not give "credence to plaintiff's conclusory allegations."  *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002).

## ARGUMENT

### A.    Plaintiff Lacks Article III Standing Because She Fails to Allege Any Injury

To establish standing under Article III, a plaintiff must demonstrate (1) that he has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is a sufficient "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).  These elements ensure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted).

The "standing inquiry [must be] especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional."  *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997); *see also Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1287 (5th Cir. 1992).  After all, "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches,

8

or of private entities." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Moreover, to obtain prospective equitable relief—as plaintiff seeks here—it is not enough to allege a past injury. *See Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Rather, plaintiff must demonstrate that she faces a "real and immediate threat" of future harm. *Lyons*, 461 U.S. at 102. "[T]hreatened injury must be certainly impending to constitute injury in fact, and [ ] allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5 (2013) (cleaned up) (emphasis added). Allegations that rely on "a highly attenuated chain of possibilities" are insufficient to show the required "certainly impending" threatened injury. *Id.* at 416.

Plaintiff does not have Article III standing to obtain prospective equitable relief because her complaint is devoid of any allegation that she faces a real and immediate threat of future harm. Her complaint asserts that she routinely applies for grants and seeks other opportunities to further her research and that when various entities consider whether or not to award grants, invite individuals to conferences, provide them speaking roles, etc., they consider that individual's publication record. (Compl. ¶¶ 14-15). She alleges that she is "disadvantaged" when applying for grants, conferences, panel presentations and the like, because when you search her name in PubMed, it returns all of her publications except for a single article she published in 2007 under her prior name. (*See id.* ¶ 27). But Plaintiff's conclusory allegation that she is disadvantaged when applying for professional opportunities is entirely insufficient to show that she is in real and immediate danger of sustaining a future injury sufficient to warrant prospective equitable and injunctive relief. *See Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) ("because the plaintiffs

9

request forward-looking relief, they must face 'a real and immediate threat of repeated injury'" (quoting *O'Shea*, 414 U.S. at 496)).  In *Murthy*, the Supreme Court reaffirmed the principle that an allegation of future injury may suffice only if the threatened injury is certainly impending or there is a substantial risk that the harm will occur.  144 S. Ct. 19786.  Here, Plaintiff has alleged neither a certainly impending injury nor a substantial risk of any harm occurring.  *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (abstract injury is not enough); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)  (plaintiff lacked standing where he failed to allege an intent to buy any future products from Amazon).

Plaintiff fails to allege that she has ever been passed over for a professional opportunity as a result of the alleged omission of this single publication from her PubMed search results, and she fails to allege that she is at any risk of being passed over for a professional opportunity in the future.  Importantly, she fails to allege that the various entities offering professional opportunities that she has applied to or will apply to even utilize PubMed in rendering decisions, as opposed to the many other resources for assessing an individual's publication record, such as their own curriculum vitae.  Further, of course any speculative harm that Plaintiff faces as a result of PubMed not cross-referencing her former and current names is ameliorated by the fact that searches in PubMed utilizing her ORCID number return her entire scientific contribution, and she can use the My Bibliography tool to create and publish a bibliography reflecting her entire scientific contribution.  Thus, she has failed to allege *any* injury, past or future, nor has she shown any risk of harm as a result of the Government's lack of cross-referencing her former name to her current name.

Accordingly, Plaintiff's complaint should be dismissed because she lacks standing for the prospective equitable relief that she seeks.

10

**B.** **Plaintiff Fails to Allege Any Violation of Equal Protection**

Plaintiff argues that the Government's alleged refusal to cross-reference authors of scientific publications to all the names that those authors have used has a disparate impact on women, because women more commonly change their name upon marriage. (Compl. ¶ 35). She alleges that this violates the equal protection components of the Fourteenth and Fifth Amendments because the Government's actions have a disparate impact on women. (*Id*. ¶ 34). While Plaintiff appears to assert her equal protection claim under both the Fourteenth and Fifth Amendments, only the Fifth Amendment applies to the conduct of the Government. *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987). Nevertheless, the "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2 (1975); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217–18, 235 (1995).

To state a claim for this type of equal protection violation, a plaintiff must allege that a government actor intentionally discriminated against her on the basis of gender. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). Such intentional discrimination can be demonstrated in several ways. *See id*. First, a law or policy is discriminatory on its face if it expressly classifies persons on the basis of race or gender. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213, 227–29 (1995). In addition, a law which is facially neutral violates equal protection if it is applied in a discriminatory fashion. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886). Lastly, a facially neutral statute violates equal protection if it was motivated by discriminatory animus and its application results in a discriminatory effect. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 264–65, (1977).

11

Plaintiff relies on the third theory to argue that the Government's alleged policy of refusing to cross-reference authors across multiple names has a disparate impact on women. (*See* Compl. ¶¶ 34-35). But when a facially gender-neutral law or policy is challenged on the ground that its effects upon women are disproportionally adverse, the plaintiff must show that the adverse effect reflects invidious gender-based discrimination on the part of the Government, as it is only purposeful discrimination that offends the Constitution. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274, (1979); *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 118 (2d Cir. 2004) ("To make out ... a claim [for gender discrimination under the Equal Protection Clause], the plaintiff must prove that she suffered purposeful or intentional discrimination on the basis of gender."); *Washington v. Davis*, 426 U.S. 229 (1976) (holding that disparate impact is insufficient for an Equal Protection Clause violation claim). In other words, disproportionate impact without a discriminatory purpose does not violate equal protection. *Collier v. Barnhart*, 473 F.3d 444, 448-89 (2d Cir. 2007); *see also Reynolds v. Barrett*, 685 F.3d 193, 201–02 (2d Cir. 2012).

"Discriminatory intent or purpose typically refers to those instances when a government actor seeks to disadvantage or negatively impact a group of persons." *Hayden*, 180 F.3d at 50 (citing *Washington*, 426 U.S. at 245–46 (concluding that purposeful discrimination was not present in a police officers' examination designed simply to test the level of an applicant's verbal skills even though black candidates suffered disproportionate adverse effects)); *Arlington Heights*, 429 U.S. at 268–71 (finding that, although the ultimate effect of a policy was discriminatory, there was no intent to discriminate when the record aptly demonstrated the decision was motivated by zoning, not racial, concerns)).

12

Plaintiff's complaint asserts that the Government's policy has a disparate impact upon women, who are more likely than men to change their names upon marriage. (*See* Compl. ¶¶ 28, 35). But Plaintiff presents no allegation indicating that the Government was motivated by an "invidious discriminatory purpose" or that it sought to disadvantage women in the way it has constructed PubMed. And, any such claim would be implausible and conclusory at best. As described above, PubMed relies on bibliographic data supplied by journals and publishers themselves. It does not alter or cross-reference the data contained in bibliographies, unless the data supplied by the journals and publishers themselves indicate that there is reason to do so. Nevertheless, PubMed provides various resources for people like Plaintiff who may have published under different names. Plaintiff can create her own bibliography in PubMed or provide the entities from whom she seeks professional opportunities with her ORCID number, which when searched in PubMed, would return her full scientific contribution.

At best, Plaintiff's complaint asserts that the Government must recognize that women may suffer more than men because of PubMed's lack of cross-referencing different author names. But "recognition of adverse impact does not suffice to imply such a purpose; the requirement of purposeful discrimination means that equal protection is not violated unless the [challenged provision] was enacted not 'in spite of' its adverse effect on the [identifiable group] but rather because it would have that effect." *Johnson v. Wing*, 178 F.3d 611, 615 (2d Cir.1999); *see also Feeney*, 442 U.S. at 279. Plaintiff fails to show that PubMed does not cross-reference different author names *because* it would adversely impact women.

Given that Plaintiff fails to allege that PubMed's lack of cross-referencing different author names constitutes gender discrimination, PubMed's policy is subject only to rational basis review. *See Zalewska v. County of Sullivan,* 316 F.3d 314, 323 (2d Cir. 2003). As set forth by the Supreme

13

Court, rational basis review is satisfied where "there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11–12 (1992) (internal citations omitted); *see also Tanov v. INS*, 443 F.3d 195, 201 (2d Cir. 2006).

Here, there is a plainly rational reason why searches in PubMed utilizing a specific name return only results for the author using that name and why PubMed does not cross-reference different author names. Citation records presented by PubMed are provided by journals and publishers—not NLM. *See* NLM, Disclaimer, https://pubmed.ncbi.nlm.nih.gov/disclaimer/ (last visited Nov. 22, 2024); NLM, XML Help for PubMed Data Providers, https://www.ncbi.nlm.nih.gov/books/NBK3828/#:~:text=Created:%20February%2026%2C%20202008;,Update:%20October%2023%2C%202024.&text=Publishers%20of%20journals%20in%20PubMed,mln.ibcn@rehsilbup%5D (last visited Nov. 22, 2024); NLM, PubMed User Guide, https://pubmed.ncbi.nlm.nih.gov/help/ (last visited Nov. 22, 2024). Those journals and publishers are responsible for their citation records and manage all changes to them. *See id*. NLM relies on those journals and publishers for the scientific integrity of their work. As NLM's website states:

> Once publications are selected for inclusion in a database, NLM does not review, evaluate, or judge the quality of individual articles and relies on the scientific publishing process to identify and address problems through published comments, corrections, and retractions (or, as in the case of preprints, withdrawal notices). The publisher is responsible for maintaining the currency of the scientific record and depositing all relevant updates to the appropriate NLM database.

NLM, Disclaimer, https://pubmed.ncbi.nlm.nih.gov/disclaimer/ (last visited Nov. 22, 2024). Accordingly, given that NLM relies on the publisher to maintain an accurate scientific record, it is

entirely reasonable for NLM to limit search functionality to the actual author surname searched in the database and to not provide cross-referencing across varying author names.

And of course, users of PubMed can search for all publications made by a single author using their ORCID number, *see* NLM, PubMed User Guide, https://pubmed.ncbi.nlm.nih.gov/help/ (last visited Nov. 22, 2024), and authors can create and make public a bibliography in PubMed reflecting the entirety of their scientific contributions, *see* NLM, My Bibliography, https://www.ncbi.nlm.nih.gov/books/NBK53595/.

Plaintiff has thus failed to allege that PubMed's failure to cross-reference a single author across multiple names violates the equal protection guarantees of the Fifth Amendment.

## C.    Plaintiff Fails to Allege Any Violation of Her Substantive Due Process Rights

Plaintiff argues that because the vast majority of women marrying in this country take the name of their spouse upon marriage, the Government's adoption of and maintenance of a policy of refusing to cross-reference authors of scientific publications, even after they have set up a unique identifier like ORCID, to all the names that such authors have used unjustifiably burdens the right to marry and/or to divorce.  (Compl. ¶ 40).  That argument is misplaced as PubMed's utilization of an author's published name in no way infringes on any individual's right to marry or divorce.

While it is correct that the Supreme Court has long recognized a fundamental right to marry, *see, e.g., Loving v. Virginia*, 388 U.S. 1 (1967) (overturning bans on interracial marriages); *Zablocki v. Redhail*, 434 U.S. 374 (1978) (striking down a statute that required court approval in order for persons failing to make child support payments to marry); *Turner v. Safley*, 482 U.S. 78 (1987) (invalidating a regulation that restricted marriage access for prison inmates), *Obergefell v. Hodges*, 576 U.S. 644 (2015) (right to same-sex marriage guaranteed by the Fourteenth

Amendment), these cases reflect one of two fundamental rights: the fundamental right to marry, and the fundamental right to marry the person of one's choice.

Conduct less than "a direct legal obstacle" to an individual's choice to marry does not trigger a fundamental right. *Zablocki*, 434 U.S. at 387; *see Parks v. City of Warner Robins*, 43 F.3d 609, 614 (11th Cir. 1995) (finding municipal employer's anti-nepotism policy did not create a "direct legal obstacle" or make marriage "practically impossible"). A policy places a "direct and substantial burden" on the right to marry when "a large portion of those affected by the rule are absolutely or largely prevented from marrying, or whe[n] those affected  by the rule are absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses. *Akers v. McGinnis*, 352 F.3d 1030, 1040 (6th Cir. 2003); *see Califano v. Jobst*, 434 U.S. 47, 58 (1977) (termination of Social Security benefits for a disabled dependent child who marries someone ineligible for benefits is not direct or substantial interference).

However, strict scrutiny review applies only when the right upon which the Government infringes is actually a "fundamental" right. *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022). "Where the claimed right is not fundamental," the court must apply rational basis review, and the government action "need only be reasonably related to a legitimate state objective." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2d Cir. 1996).

This case does not concern the right to marry or divorce. These rights were already realized by Plaintiff when she did in fact marry and divorce. *See, e.g., Dep't of State v. Munoz*, 602 U.S. 899 (2024) (rejecting plaintiff's argument that his claim invoked fundamental right to marry, when he was already married, and sought rather to reside with her noncitizen spouse in the United States); *Makransky v. Johnson*, 176 F. Supp. 3d 217, 227 (E.D.N.Y. 2016) ("Plaintiff, to be sure, has a constitutional right to marry—and he has done just that. But what he does not have is a

16

constitutional right to receive a visa for his wife." (internal record citations omitted)); *Bakran v. Johnson*, 192 F. Supp. 3d 585, (E.D. Pa. 2016) (plaintiff's argument that law burdened his fundamental right to marry was "plainly meritless" as he had married his wife and remained married to her); *Quiroz v. Short*, 85 F. Supp. 3d 1092, 111 (N.D. Cal. 2015) ("Here, because plaintiff was not prevented or prohibited from marrying Ms. Chavez, defendant's conduct did not implicate plaintiff's fundamental right to marriage.").

The fundamental right to marry does not include other privileges, like having a government database cross reference multiple names for a married or divorced individual. *See, e.g., Kerry v. Din*, 576 U.S. 86, 101 (2015) (plurality) (no constitutional right to live with one's spouse); *Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 555 (2d Cir. 1975) (constitutionally protected right to marry does not include a citizen spouse's interest in having the alien spouse remain in the United States); *Azizi v. Thornburgh*, 908 F.2d 1130, 1133 (2d Cir. 1990) (constitutionally protected right to marry does not include right to live with one's spouse in the United States); *Keckeisen v. Ind. Sch. Dist. 612*, 509 F.2d 1062, 1065 (8th Cir. 1975) (right to marry does not include right to work in the same school district as spouse); *Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958) (deportation of wife's husband did not offend her right to marry because "deportation would not in any way destroy the legal union which the marriage created").

"[T]he Federal Government here has not attempted to forbid a marriage." *Din*, 576 U.S. at 94 (plurality opinion). Nor has it "refused to recognize [Plaintiff's] marriage" or to afford the marriage full legal effect. *Id*. at 101. Nor has it prohibited a married couple from cohabitating or making "personal" decisions about "matters of marriage and family life." *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974). This case is merely about one consequence attendant to changing one's name. But the Supreme Court has recognized "[o]ver a century ago" that "the due

17

process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980) (citing *Legal Tender Cases*, 79 U.S. (12 Wall.) 457, 551 (1870) (stating that the Fifth Amendment Due Process Clause "has never been supposed to have any bearing upon, or to inhibit laws that indirectly work harm and loss to individuals")). As a result, the Court has rejected the notion that an action's incidental or indirect effects can be said to have interfered with the citizen's constitutionally protected liberty or property interests. *O'Bannon*, 447 U.S. at 788-789; *see Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 766-768 (2005). Here, Plaintiff has not been deprived of any protected interest: the indirect and incidental result of PubMed's lack of cross-referencing publications under her former and current names "does not amount to a deprivation of any interest in life, liberty, or property." *O'Bannon*, 447 U.S. at 787.

Thus, the Government's policy of cross-referencing author names only to publications under the same name is subject only to rational basis review, and it plainly meets this standard.

## D.    Plaintiff Fails to Allege a Violation of the APA

Under the APA, a reviewing court can set aside an agency action if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, courts consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted). Furthermore, courts will only set aside the agency's determination if the decision "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *LaFleur v. Whitman*, 300 F.3d 256, 267 (2d Cir. 2002) (internal quotation marks omitted). In determining whether an action is arbitrary and capricious, "judicial review of

18

agency action is necessarily narrow, and a reviewing court may not itself weigh the evidence or substitute its judgment for that of the agency." *Davila v. Lang*, 343 F. Supp. 3d 254, 276 (S.D.N.Y. 2018); *see also Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007) ("[S]o long as the agency examines the relevant data and has set out a satisfactory explanation . . . , a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may be reasonably discerned.").

Plaintiff argues the Government's failure to cross-reference publications by a single author under different names is arbitrary and capricious because the relevant statute requires NLM to "organize the materials [such as 'books, periodicals, prints, films, recording, and other library materials pertinent to medicine] by appropriate cataloging, indexing, and bibliographical listings." 42 U.S.C. § 286(b)(2); (Compl. ¶¶ 44-45). Plaintiff appears to assert that PubMed's failure to cross-reference is not "appropriate" because such lack of cross-referencing has a disparate impact on women. (Compl. ¶ 45).

"Appropriate" merely means "[s]uitable for a particular person, condition, occasion, or place; fitting." Appropriate, American Heritage Dictionary (5th ed. 2022); *see also* Appropriate, Cambridge Dictionary, https://dictionary.cambridge.org/ (last visited Nov. 22, 2024) (defining appropriate as "suitable or right for a particular situation or occasion"). Plaintiff's complaint fails to explain why PubMed's lack of cross-referencing different author names is not suitable for the statute's stated purpose of organizing materials according to their bibliographical listings.

In fact, PubMed complies with the exact terms of the statute: it organizes material according to bibliographical listings. Those bibliographical listings are provided directly by the publisher of the material itself, which ensures scientific integrity. Further, PubMed indexes publications by author name, author identifier, and numerous other categories. That PubMed does

19

not contain additional features to cross-reference authors across multiple names in no way renders the Government's actions contrary to the governing statute, or arbitrary and capricious. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (agency action not arbitrary or capricious where its reasons for new policy were "entirely rational"); *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Hum. Servs.*, 844 F. Supp. 770, 783 (D.D.C. 1993) (no action should be set aside if the action is rational, based on relevant factors, and within the agency's statutory authority). Accordingly, the PubMed platform has not been designed in a manner that is contrary to law or otherwise arbitrary and capricious.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Complaint.

Dated: New York, New York
       November 22, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:  */s/ Tara Schwartz*
TARA SCHWARTZ
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2663
E-mail: tara.schwartz@usdoj.gov

20