UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                  :

MARSHA REYNGOLD, M.D., PH.D.,            :

                                  :

                  Plaintiff,       :

                                  :        24-CV-6496 (JMF)

      -v-                   :

                                  :       MEMORANDUM OPINION

NATIONAL INSTITUTES OF HEALTH et al,  :         AND ORDER

                Defendant.    :

                                  :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Marsha Reyngold, a physician and researcher in the field of oncology, brings this action alleging that the cross-referencing policy of PubMed, a database of biomedical and life sciences literature that is owned and operated by the federal government, infringes on her Fifth Amendment equal protection and substantive due process rights and is arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. ("APA"). *See* ECF No. 1 ("Compl."), ¶¶ 3, 32-46.[1] Defendants — the National Institutes of Health, the National Library of Medicine, and the U.S. Department of Health and Human Services (together, the "Government") — move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss her Complaint for lack of standing and failure to state a claim. *See* ECF No. 23. For the reasons that follow, the Government's motion to dismiss for lack of standing is GRANTED.

---

[1]    The case was initially assigned to the Honorable Jennifer H. Rearden and reassigned to the undersigned on January 28, 2026.

## BACKGROUND

The following facts, drawn principally from the Complaint, are construed in the light most favorable to Reyngold as the non-moving party. *See, e.g.*, *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 170, 172 (2d Cir. 2021).

Reyngold is a board-certified radiation oncologist. Compl. ¶ 7. She is currently employed as an assistant attending physician at Memorial Sloan Kettering Cancer Center, a leading cancer treatment and research institution. *Id.* ¶ 11. In addition to treating patients, Reyngold "actively engages in research." *Id.* ¶ 12. She has co-authored over forty publications — ten of which list her as first author — and frequently speaks on scientific panels and conferences in the United States and abroad. *See id.* ¶¶ 12-13. Reyngold routinely applies for grants and seeks other opportunities to further her research. *Id.* ¶ 14.

As with others in her field, Reyngold's research can be found on PubMed, a database of biomedical and life sciences literature that is owned and operated by the federal government. *See id.* ¶¶ 4-6, 20, 26-27; *see also* 42 U.S.C. § 286(b). As relevant here, members of the public are able to search the database in a variety of ways, such as by inputting key terms, a journal name, the name of an author, or an author's "Open Researcher and Contributor ID" or "ORCID" — a unique identifier that researchers can create on PubMed. *See* Compl. ¶ 21-22. Significantly, PubMed does not cross-reference articles authored by one person who has used multiple names except through the author's ORCID. *See id.* ¶¶ 23-27.

Reyngold has published articles under two different names. Specifically, in 2007, she published an article in the *Journal of Biological Chemistry* using her then-married name, Marsha Laufer. *Id.* ¶¶ 16-17. Thereafter, she reverted to using the surname Reyngold and has published her other articles under that name. *Id.* ¶ 18. Because PubMed does not cross-reference author's

different names, searching the database using the name "Marsha Reyngold" does not yield the 2007 article. *Id.* ¶ 26. Similarly, when other searches (e.g., by journal name) yield a hyperlink of Reyngold's name, that hyperlink does not lead to the 2007 article either. *See id*. ¶¶ 23, 26. By contrast, searching by Reyngold's ORCID yields all of her publications, as she has linked both names to that unique identifier. *See id.* ¶ 22, 26.

Reyngold challenges PubMed's failure to cross-reference the articles she has written under different names. Specifically, she alleges that "[m]embers of the public" generally conduct searches in PubMed by author name, *id.* ¶ 25, and that, as a result, she is "disadvantaged when applying for various scientific grants, conferences, panel presentations and the like," *id*. ¶ 27, and as well as in attracting new patients, *see* ECF No. 27-1 ("Reyngold Decl."), ¶¶ 5-7. She claims that these "disadvantages stem solely from [her] decision (common to about 80% of married women) to change her name . . . as part of getting married" or divorced. Compl. ¶ 27. She asserts that PubMed's failure to cross-reference her publications violates equal protection, impermissibly burdens the fundamental right to marry, and flouts the APA, *see id.* ¶¶ 4-6, 32-46, and she seeks injunctive and declaratory relief as well as nominal damages, *id.* at 8-9.

## DISCUSSION

The Court begins, as it must, with the Government's motion to dismiss for lack of subject-matter jurisdiction. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In particular, the Government moves to dismiss on the ground that Reyngold lacks standing, which is an "essential aspect" of Article III's limitation on the "judicial power" of the federal courts to "Cases" and "Controversies." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (internal quotation marks omitted). Article III standing "contains three elements": (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-

3

61 (1992).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (cleaned up).  Past injury can provide a basis to seek nominal damages.  *See, e.g.*, *Doe v. Hochul*, 139 F.4th 165, 185-86 (2d Cir. 2025).  But "[t]o obtain forward-looking relief, a plaintiff must establish a substantial risk of future injury that is traceable to the government defendants and likely to be redressed by an injunction [or declaratory judgment] against them."  *Id.* at 186 (cleaned up) (quoting *Murthy v. Missouri*, 603 U.S. 43, 69 (2024)).  The risk of "*possible* future injury" is "not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted).

Applying these standards here, the Court concludes that Reyngold lacks standing to bring her claims.  First, with respect to her request for nominal damages, Reyngold fails to allege that she was ever passed over for a professional opportunity due to the alleged omission of her 2007 article from her PubMed search results.  She suggests that she may have lost patients due to PubMed's search functions, *see* Reyngold Decl. ¶¶ 5-7, but her assertions on that front are far too speculative and conclusory to establish actual injury, *see, e.g.*, *Parker Madison Partners v. Airbnb, Inc.*, 283 F. Supp. 3d 174, 181 (S.D.N.Y. 2017) (finding that the plaintiff's allegation of "substantial lost revenues," without specifics of "any current or potential clients that have been lost," was too conclusory to confer standing).  Second, with respect to her requests for forward-looking relief, she fails to plausibly allege that she faces "a substantial risk of future injury" due to PubMed's cross-referencing policy.  *Doe*, 139 F.4th at 186 (cleaned up).  Indeed, conclusory assertions aside, she fails to even allege that the entities offering professional opportunities to which she has applied or will apply use PubMed in rendering decisions.

4

Reyngold's counterarguments fall short.  She alleges that PubMed's cross-referencing policy causes her injury because it denies her an equal opportunity to compete for professional advancement and is likely to result in economic harm.  *See* ECF No. 27 ("Reyngold Mem."), at 4-7.  But these arguments depend on a "a highly attenuated chain of possibilities" and therefore "do[] not satisfy the requirement that a threatened injury must be certainly impending." *Roberts v. Bassett*, Nos. 22-622-CV, No. 22-692-CV, 2022 WL 16936210, at *2 (2d Cir. Nov. 15, 2022) (cleaned up) (quoting *Clapper*, 568 U.S. at 410).  That is, these theories of injury assume that the entities and people from whom Reyngold could obtain a professional opportunity (be they grantors or patients) consider an applicant's publication record in determining whether to grant the relevant opportunity, use PubMed to access that record, and search PubMed by author name. *See* Compl. ¶ 15; Reyngold Decl. ¶¶ 8-9.  Thus, Reyngold's injury depends on the relevant entity or person (1) finding her publication record relevant to their decision making, (2) relying on PubMed alone to evaluate that record; (3) searching on PubMed solely by her name; *and* (4) choosing one of her male peers instead of her because PubMed's name-search feature suggests that she has published one fewer article than she has actually published.  Merely reciting this chain of possibilities confirms that it is "too speculative for Article III purposes." *Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 234 (S.D.N.Y. 2019) (cleaned up) (quoting *Lujan*, 504 U.S. at 565 n.2).

In fact, to the extent that Reyngold alleges that PubMed's search features are likely to deprive her of "grants and . . . other opportunities to further her research," Compl. ¶ 14, her theory of injury is even more attenuated because she does not "allege that [she] actually applied for a benefit or 'very likely would have' applied for the benefit but for defendant's conduct," *Wheeler*, 367 F. Supp. 3d at 233 (quoting *MGM Resorts Int'l Glob. Gaming Dev., LLC v.*

*Malloy*, 861 F.3d 40, 47 (2d Cir. 2017)).  All Reyngold alleges is that she "routinely applies for grants and seeks other opportunities to further her research."  Compl. ¶ 14; *see also* Reyngold Decl. ¶ 4.  That is not enough.  *See Wheeler*, 367 F. Supp. at 233 (holding that imminence "requires more than an interest in an undefined benefit or opportunity at some point in the future" (citing *MGM Resorts*, 861 F.3d at 47-48)); *see also, e.g.*, *Faculty v. N.Y. Univ.*, 11 F.4th 68, 76-78 (2d Cir. 2021) (holding that plaintiff scholars lacked standing to challenge a law school's faculty-selection processes and academic journal's article- and editor-selection policies because they had failed to allege concrete plans to apply for employment or submit articles for publication); *MGM Resorts*, 861 F.3d at 47 (finding that a casino developer had not alleged sufficiently imminent competitive harms to confer standing because it had "not alleged any concrete plans to enter into a development agreement with a Connecticut municipality, or demonstrated any serious attempts at negotiation").

That leaves Reyngold's claim to Article III standing based on her "fear and anxiety about losing out on professional opportunities."  Reyngold Mem. 7 (internal quotation marks omitted).  Although "[a]n injury-in-fact may simply be the fear or anxiety of future harm," *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), Reyngold does not actually allege any such fear or anxiety.  And even if she had, "allegations of fear or anxiety of future harm alone are insufficient to establish an injury in fact where the threat creating the fear or anxiety is not [itself] sufficiently imminent."  *Siino v. City of New York*, No. 14-CV-7217 (MKB) (LB), 2020 WL 3807451, at *21 (E.D.N.Y. Feb. 27, 2020) (internal quotation marks omitted), *report and recommendation adopted*, No. 14-CV-7217 (MKB) (LB), 2020 WL 1861865 (E.D.N.Y. Apr. 14, 2020); *accord, e.g.*, *Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d 568, 580 n.4 (S.D.N.Y. 2018) (observing that post-*Denney* "Second Circuit authority makes clear

6

. . . that fear-based standing requires 'an imminent threat of future harm or a present harm incurred in consequence of such a threat'" (quoting *Hedges v. Obama*, 724 F.3d 170, 188-89 (2d Cir. 2013))); *Feinberg v. Apple, Inc.*, No. 15-CV-5198 (RA), 2016 WL 4371746, at *3 (S.D.N.Y. Aug. 10, 2016) ("[T]he Second Circuit has clarified that allegations of fear or anxiety of future harm . . . 'may support standing when the threat creating the fear is sufficiently imminent.'" (quoting *Hedges,* 724 F.3d at 195)); *cf. Clapper*, 568 U.S. at 416 ("Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing — because the harm respondents seek to avoid is not certainly impending.").

## CONCLUSION

In sum, Reyngold fails to plausibly allege an actual or imminent injury and, thus, lacks standing to seek the relief she seeks.  Accordingly, her case must be and is DISMISSED for lack of subject-matter jurisdiction.  Moreover, the Court declines to grant Reyngold leave to amend her Complaint *sua sponte*.  Although leave to amend a complaint should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted).  Here, the flaws in Reyngold's Complaint are substantive, so amendment would be futile.  *See, e.g.*, *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (noting that leave to amend "should be denied" as futile where the problem with the claim is "substantive" and "better pleading will not cure it").  Further, she does not request leave to amend or suggest that she is in possession of facts that would cure the problems with her claims.  *See, e.g., Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).

The Clerk of Court is directed to terminate ECF No. 23, to enter judgment for Defendants consistent with this Memorandum Opinion and Order, and to close this case.

SO ORDERED.

Dated: February 24, 2026
New York, New York

_____
JESSE M. FURMAN
United States District Judge